1   Spencer C. Skeen, CA Bar No. 182216
    spencer.skeen@ogletree.com
2   Marlene M. Moffitt, CA Bar No. 223658
    marlene.moffitt@ogletree.com
3   Janna I. Jamil, CA Bar No. 265435
    janna.jamil@ogletree.com
4   OGLETREE, DEAKINS, NASH,
    SMOAK & STEWART, P.C.
5   4660 La Jolla Village Drive, Suite 900
    San Diego, CA  92122
6   Telephone:  858-652-3100
    Facsimile:   858-652-3101
7
8   Attorneys for Defendant BECTON
    DICKINSON AND COMPANY
    (erroneously sued as BECTON AND
9   DICKINSON)

10  Christopher Ward, CA Bar No. 238777
    cward@foley.com
11  Sara A.L. Abarbanel, CA Bar No. 324045
    sabarbanel@foley.com
12  FOLEY & LARDNER LLP
    11988 El Camino Real, Suite 400
13  San Diego, CA  92130
    Telephone:  858-847-6700
14  Facsimile:   858-792-6773

15  Attorneys for Defendant APIDEL
    TECHNOLOGIES, LLC
16
                **UNITED STATES DISTRICT COURT**
17
             **NORTHERN DISTRICT OF CALIFORNIA**
18

19  RAMON AGUILA, individually and on        Case No.
20  behalf of all others similarly situated,
                                              **NOTICE OF REMOVAL OF CIVIL**
21              Plaintiff,                    **ACTION TO UNITED STATES**
                                              **DISTRICT COURT**
22        vs.
                                              28 U.S.C. § 1332(d) (Class Action
23  BECTON AND DICKINSON; APIDEL             Fairness Act)]
    TECHNOLOGIES, LLC; and DOES 1-
24  50, inclusive,                            [Filed concurrently with Civil Case
                                              Cover Sheet; Notice of Party with
25              Defendants.                   Financial Interest; and Declarations of
                                              Jaime Serrano, Janna I. Jami, and Ed
26                                            Altom]

27                                            Removal Date:    October 28, 2022

28

# **TABLE OF CONTENTS**

I.      STATE COURT ACTION ...................................................................................... 1

II.     REMOVAL IS TIMELY ...................................................................................... 1

III.    REMOVAL IS PROPER UNDER CAFA ............................................................ 1

    A.      CAFA's Diversity of Citizenship Requirement is Satisfied........................... 2

    B.      CAFA's Class Size Requirement is Satisfied................................................ 3

    C.      CAFA's Amount in Controversy is satisfied ................................................ 5

        1.      Relevant Data ...................................................................................... 6

        2.      Wage Statement Penalties .................................................................... 6

        3.      Waiting Time Penalties ........................................................................ 7

        4.      Meal and Rest Period Premium Pay..................................................... 7

        5.      Attorneys' Fees.................................................................................... 9

        6.      Summary ............................................................................................ 10

        1.      Relevant Data .................................................................................... 10

        2.      Wage Statement Penalties .................................................................. 10

        3.      Waiting Time Penalties ...................................................................... 11

        4.      Meal and Rest Period Premium Pay................................................... 12

        5.      Attorneys' Fees.................................................................................. 13

        6.      Summary ............................................................................................ 14

IV.     VENUE IS PROPER IN THIS COURT ............................................................ 14

V.      CONCLUSION .................................................................................................. 15

Case No.

# TABLE OF AUTHORITIES

**Cases**                                                                                             **Page(s)**

*Cortez v. Purolator Air Filtration Prods. Co.*,
  23 Cal. 4th 163 (2000) ...............................................................................................8, 12

*Elizarraz v. United Rentals, Inc.*,
  2019 WL 1553664 (C.D. Cal. Apr. 9, 2019) ...........................................................8, 13

*Falk v. Children's Hospital Los Angeles*,
  237 Cal.App.4th 1454 (2015) ...................................................................................6, 10

*Garibay v. Archstone Communities LLC*,
  539 F. App'x 763 (9th Cir. 2013) ............................................................................9, 13

*Henry v. Cent. Freight Lines, Inc.*,
  692 F. App'x 806 (9th Cir. 2017) ...................................................................................5

*Hertz Corp. v. Friend*,
  130 S. Ct. 1181 (2010) ...................................................................................................2

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*,
  526 US 344 (1999) ..........................................................................................................1

*Pineda v. Bank of America, N.A.*,
  50 Cal. 4th 1389 (2010) ...........................................................................................7, 11

*Rodgers v. Central Locating Service, Ltd.*,
  2006 U.S. Dist. LEXIS 6255 ...........................................................................................2

*Rwomwijhu v. SMX, LLC*,
  No. CV1608105ABPJWX, 2017 WL 1243131 (C.D. Cal. Mar. 3, 2017) ..............9, 14

*Sanchez v. Russell Sigler, Inc.*,
  No. CV1501350ABPLAX, 2015 WL 12765359 (C.D. Cal. Apr. 28, 2015) .........9, 14

*Serrano v. 180 Connect Inc.*,
  478 F.3d 1018 (9th Cir. 2007) .......................................................................................3

*Standard Fire Insurance Co. v. Knowles*,
  133 S.Ct. 1345 (2013) ....................................................................................................5

*Tomlinson v. Indymac Bank, F.S.B.*,
  359 F. Supp. 2d 891 (C.D. Cal. 2005) ....................................................................8, 12

**Statutes and Other Authorities**

28 U.S.C. 1332 ....................................................................................................1, 2, 3, 5

28 U.S.C. § 84(d) .........................................................................................................14

28 U.S.C. §§ 1453(a) and (b) ...................................................................................2

28 U.S.C. § 1441(a) ................................................................................................14

28 U.S.C. § 1446 .......................................................................................1, 2, 14, 15

Cal. Bus. & Prof. Code § 17200. .............................................................................2

Class Action Fairness Act (CAFA) ..........................................................1, 2, 5, 9, 14

Cal. Bus. & Prof. Code § 17208 .........................................................................7, 12

Cal. Code Civ. Proc. § 338(a) .............................................................................7, 11

Cal. Code Civ. Proc. § 340(a) .............................................................................6, 10

Cal. Code Civ. Proc. § 382 .......................................................................................3

California Labor Code § 203 ................................................................................7, 11

Federal Rule of Civil Procedure 6(a) ....................................................................1, 15

Labor Code section 226 .......................................................................................6, 10

Unfair Competition Law (UCL) ........................................................7, 8, 11, 12, 13

NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT

Defendants APIDEL TECHNOLOGIES, LLC and BECTON DICKINSON AND COMPANY (erroneously sued as BECTON AND DICKINSON) ("BD," and together with Apidel, "Defendants") remove this putative class action to the United States District Court for the Northern District of California under 28 U.S.C. § 1332(d) (the Class Action Fairness Act ["CAFA"]) and § 1446 because (1) Plaintiff and other members of the putative class are citizens of a State different from any defendant; (2) the number of members of all proposed plaintiff classes in the aggregate is over 100; and (3) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

## I.   STATE COURT ACTION

1.   Plaintiff filed his Complaint on August 8, 2022, in the Santa Clara County Superior Court ("Action"). The Action was assigned Case No. 22CV401816. (Declaration of Janna I. Jamil ["Jamil Decl."], ¶ 2; Ex. 1, Complaint.) Plaintiff served his Complaint on BD on September 28, 2022. (*Id.*) Plaintiff served his Complaint on Apidel on or about October 12, 2022. (Declaration of Ed Altom ["Altom Decl."], ¶ 3; Ex. 1, Complaint.).

2.   On October 27, 2022, Apidel filed an Answer to Plaintiff's Complaint in the Santa Clara County Superior Court. (*Id.*)

3.   On October 26, 2022, BD filed an Answer to Plaintiff's Complaint in the Santa Clara County Superior Court. (Jamil Decl., ¶ 3.)

## II.   REMOVAL IS TIMELY

4.   Under 28 U.S.C. § 1446(b) and Federal Rule of Civil Procedure 6(a), Defendants' earliest deadline to remove the Action, based on service of the Complaint on BD, is October 28, 2022. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 US 344, 354 (1999). This removal is timely.

## III.   REMOVAL IS PROPER UNDER CAFA

5.   Plaintiff's Complaint asserts: (1) failure to pay wages including overtime; (2) failure to provide meal periods; (3) failure to provide rest periods; (4) failure to

pay timely wages; (5) failure to provide accurate itemized wage statements; (6) failure to indemnify necessary business expenses; (7) failure to pay reporting time; and (8) violation of Business and Professions Code § 17200, *et seq*. (Ex. 1, Complaint.)

6.     CAFA grants district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant; the number of members of all proposed plaintiff classes in the aggregate is over 100; and where the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs. 28 U.S.C. § 1332(d). CAFA authorizes such removal under 28 U.S.C. § 1446.

7.     This Court has original jurisdiction over the Action under CAFA because it is a civil case filed as class action wherein at least one member of the putative class of plaintiffs is a citizen of a state different from Defendants, the number of individuals in Plaintiff's proposed classes in the aggregate is over 100, and the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

### A.     CAFA's Diversity of Citizenship Requirement is Satisfied

8.     CAFA's diversity requirement is satisfied when at least one plaintiff is a citizen of a state in which none of the defendants are citizens. 28 U.S.C. §§ 1332(d)(2), 1453(a) and (b); *Rodgers v. Central Locating Service, Ltd*., 2006 U.S. Dist. LEXIS 6255, *7-*8.

9.     Under 28 U.S.C. § 1332(c)(1); a corporation shall be deemed to be a citizen of every State and foreign state which it has been incorporated and of the State or foreign state where it has its principal place of business. A company's "'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities," *i.e.*, the corporation's "nerve center." *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010). The "nerve center" is normally where the corporation maintains its headquarters. *Id.*

10.    At all relevant times, Apidel has been a limited liability company organized under the laws of Illinois, with its principal place of business in Illinois.

(Altom Decl., ¶ 2.) Illinois is where Apidel's's executive management directs, controls, and coordinates its activities. (*Id.*) Apidel has not been incorporated in California, has not had its headquarters, executive offices, or principal place of business in California, and none of its members. (*Id.*) Accordingly, Apidel is a citizen of Illinois and not a citizen of California.

11.     At all relevant times, BD has been a company organized under the laws of New Jersey, with its principal place of business in New Jersey. (Declaration of Jaime Serrano ["Serrano Decl."], ¶ 3.) BD's principal place of business is in New Jersey because its headquarters are located there, and that is where BD's executive management directs, controls, and coordinates its activities. (Serrano Decl., ¶ 4.) BD has not been incorporated in California and has not had its headquarters, executive offices, or principal place of business in California. (Serrano Decl., ¶5.) Accordingly, BD is a citizen of New Jersey and not a citizen of California.

12.     According to the Complaint, Plaintiff is a resident of the State of California within the meaning of 28 U.S.C. 1332(a). (Complaint, ¶ 6 ["Plaintiff RAMON AGUILA was, at all times relevant to this action, a resident of California."].)

13.     Minimal diversity is established because, at all relevant times, Plaintiff and other members of the putative class are citizens of States that BD is not. Additionally, Plaintiff and other members of the putative class are citizens of States that Apidel is not. Removal is therefore proper under 28 U.S.C. § 1332(d). *Serrano v. 180 Connect Inc.*, 478 F.3d 1018, 1019 (9th Cir. 2007).

**B.     CAFA's Class Size Requirement is Satisfied**

14.     Plaintiff brings the Action pursuant to California Code of Civil Procedure § 382 on behalf of all persons that fall within this category:

> All persons who have been employed by Defendants as Non-Exempt Employees or equivalent positions, however titled, in the state of California within four (4) years from the filing of the Complaint in this action until its resolution. (collectively referred to as the "Class" or "Plaintiff's Class" or "Class Members"). (Complaint, ¶ 10.)

15.     Plaintiff also sues on behalf of multiple sub-classes, which he defines as:

Sub-Class 1: All Class Members who are or were employed by Defendants who worked in excess of six or ten hours in a work-day but were not provided with a timely, uninterrupted, duty-free thirty-minute meal period (hereinafter collectively referred to as the "Meal Period Subclass").

Sub-Class 2: All Class Members who are or were employed by Defendants who worked in excess of three and a half (3.5) or ten hours in a work-day but were not authorized and permitted a rest period (hereinafter collectively referred to as the "Rest Period Subclass").

Sub-Class 3: All Class Members who are or were employed by Defendants at any time between August 2021 and the present and who received wage statements from Defendant (hereinafter collectively referred to as the "Wage Statement Subclass").

Sub-Class 4: All Class Members who are or were employed by Defendants at any time between August 2019 and the present and have separated their employment (hereinafter collectively referred to as the "Waiting Time Penalty Subclass").

Sub-Class 5: All Class Members who did not receive reporting time pay by Defendants (hereinafter collectively referred to as the "Reporting Time Subclass").

Sub-Class 6: All Class Members who are or were employed by Defendants and subject to Defendant's Unfair Business Practices (hereinafter collectively referred to as the "Unfair Business Practice Subclass").

(Complaint, ¶ 11.)

16.     From on or about August 8, 2018 to present, Apidel has employed, in the aggregate, at least 420 current and former employees in California who were classified as non-exempt. (Altom Decl., ¶ 5.)

17.     From on or about August 8, 2018 to present, BD has employed, in the aggregate, at least 442 current and former employees[1] in California who were classified as non-exempt. (Serrano Decl., ¶ 6.)

18.     The jurisdictional minimum is therefore satisfied.

**C.     CAFA's Amount in Controversy is satisfied**

19.     CAFA authorizes the removal of class action cases in which the amount in controversy for all class members exceeds $5,000,000. 28 U.S.C. § 1332(d).

20.     The "District Court [must] determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the definition of [a plaintiff's] proposed class and determine whether the resulting sum exceeds [$5,000,000]." *Standard Fire Insurance Co. v. Knowles*, 133 S.Ct. 1345, 1348 (2013). For purposes of removal, "[t]he court accepts the allegations in the complaint as true and assumes the jury will return a verdict in the plaintiff's favor on every claim." *Henry v. Cent. Freight Lines, Inc.*, 692 F. App'x 806, 807 (9th Cir. 2017); citing, *Campbell v. Vitran Express, Inc.*, 471 F. App'x. 646, 648 (9th Cir. 2012).

21.     Plaintiff seeks the recovery of unpaid wages (including overtime wages), reporting time pay, meal and rest period premium pay, unreimbursed business expenses, itemized wage statement penalties, and waiting time penalties, on behalf of himself and the putative classes. (*See* Complaint.) The Complaint, on its face, satisfies the $5 million threshold for CAFA removal.[2] *See* 28 U.S.C. § 1332(d).

**Amount in Controversy Alleged Against BD**

---

[1] This amount does not include contingent workers. In alleging the class size for CAFA removal, BD does not concede BD employed Plaintiff, that Plaintiff's allegations in the Complaint are accurate, or that such a class or sub-class(es) can be maintained or certified.

[2] In alleging the amount in controversy for purposes of CAFA removal, Defendants do not concede in any way that the allegations in the Complaint are accurate, that BD employed Plaintiff, or that Plaintiff is entitled to any of the monetary relief requested in the Complaint. Nor do Defendants concede that any or all putative class members are entitled to any recovery in this case, or are appropriately included in the Action.

### 1.   Relevant Data

22.   During the class period, from August 8, 2018 to the present, BD has employed, in the aggregate, at least 442 current and former non-exempt employees in California, who worked approximately 30,325 pay periods and had an average hourly rate of approximately $32.55. (Serrano Decl., ¶ 6.) This number does not include contingent workers. (*Id.*) During this period, non-exempt employees were issued wage statements on a bi-weekly basis. (*Id.*)

23.   From August 8, 2021 to the present, BD issued at least 9,462 wage statements to approximately 350 non-exempt employees in California. (Serrano Decl., ¶ 7.)

24.   From on or about August 8, 2019 to the present, approximately 119 individuals who were employed as non-exempt employees in California separated from their employment with BD. (Serrano Decl., ¶ 8.) These employees earned an average hourly rate of $29.58, which equals an average daily rate (8 hours x $29.58) of approximately $236.64. (*Id.*)

### 2.   Wage Statement Penalties

25.   A one-year statutory period applies to Plaintiff's claim for wage statement penalties. Cal. Code Civ. Proc. § 340(a); *Falk v. Children's Hospital Los Angeles*, 237 Cal.App.4th 1454, 1469 (2015).

26.   Plaintiff seeks statutory penalties for inaccurate wage statements pursuant to Labor Code section 226 in the amount of $50 for the initial violation and $100 for each subsequent violation. (Ex. 1, Complaint – Prayer for Relief on the Fifth Cause of Action, ¶ 1.)

27.   As noted above, from August 8, 2021 to the present, BD issued at least 9,462 wage statements to 350 putative class members. (Serrano Decl., ¶ 7.) Therefore, based on Plaintiff's allegations, the amount in controversy for wage statement penalties is **$928,700** (350 wage statements x $50 = $17,500; 9,112 wage statements x $100 = $911,200 [$17,500 + $911,200 = $928,700]).

### 3.    <u>Waiting Time Penalties</u>

28.    California Labor Code § 203 provides that "[i]f an employer willfully fails to pay … any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."

29.    A three-year statutory period applies to Plaintiff's claim for waiting time penalties. *Pineda v. Bank of America, N.A.*, 50 Cal. 4th 1389, 1398 (2010) (waiting-time penalty claims are governed by three-year statute of limitations under Cal. Code Civ. Proc. § 338(a).)

30.    Plaintiff seeks penalties for "[t]he wages of all terminated employees from the California Labor Sub-Class as a penalty…in accordance with Cal. Lab. Code § 203." (Ex. 1, Complaint – Prayer for Relief on the Fourth Cause of Action, ¶ 1.)

31.    As noted above, from August 8, 2019 to the present, at least 119 individuals who were employed as non-exempt employees in California separated from their employment with BD. These employees earned an average hourly rate of $29.58. (Serrano Decl., ¶ 8.) Therefore, based on Plaintiff's allegations, the amount in controversy for waiting time penalties is **$844,804.80** ($29.58 x 8 hours x 30 days x 119 putative class members = $844,804.80).

### 4.    <u>Meal and Rest Period Premium Pay</u>

32.    Under California's Unfair Competition Law ("UCL"), Plaintiff seeks restitution in the form of one additional hour of premium pay for each workday in which Defendant failed to provide a timely, duty-free meal period. (Complaint, Prayer for Relief on the Eight Cause of Action ¶ 1.) Similarly, under the UCL, on behalf of himself and the putative class, Plaintiff seeks restitution in the form of one additional hour of premium pay for each workday in which Defendant failed to provide a timely, lawful rest break. (*Id.*)

33.    The statute of limitations for a claim under the UCL is four years. Cal.

Bus. & Prof. Code § 17208. Under the UCL, an individual may recover unlawfully withheld wages as a form of restitution. *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 173 (2000). A plaintiff may seek to recover meal or rest period premium pay as a form of restitution under the UCL, under the theory that premium pay constitutes wages. *See Tomlinson v. Indymac Bank, F.S.B.*, 359 F. Supp. 2d 891, 896-97 (C.D. Cal. 2005).

34.     During the class period, from August 8, 2018 to the present, BD has employed, in the aggregate, at least 442 current and former non-exempt employees in California, who worked approximately 30,325 pay periods and had an average hourly rate of approximately $32.55. (Serrano Decl., ¶ 6.)

35.     BD may employ reasonable assumptions based on the Complaint to determine the amount in controversy. It is alleged that Plaintiff and putative class members were "regularly required" to work shifts in excess of five hours without being provided a lawful meal period and over ten hours without being provided a second meal period. (Complaint, ¶ 28.) It is further alleged that Plaintiff and putative class members were "systematically not authorized and permitted" lawful rest periods. (Complaint, ¶ 37.) In fact, Plaintiff specifically alleges that he was not permitted to take a rest break "approximately 75% of the time throughout his employment with Defendants." (Complaint, ¶ 39.)  Based on these allegations of regular and systematic meal and rest period violations, BD utilized an extremely conservative estimate of 25% meal and 25% rest period violation rates (or 2.5 total violations per week and 5 total per pay period), resulting in a total amount of meal and rest period premium pay in controversy of approximately **$4,935,393.75** (30,325 pay periods x 5 total violations per pay period x $32.55 per hour = $4,935,393.75). Case law finds that similar allegations can even support higher violation rates as a matter of law. *See, e.g., Elizarraz v. United Rentals, Inc.*, 2019 WL 1553664, at *3-4 (C.D. Cal. Apr. 9, 2019) ("**courts have found violations rates of 50% proper with language such as 'policy and practice'**"; Oda v. Gucci Am., Inc., No. 2:14-CV-07469-SVW, 2015 WL 93335,

at *4-5 (C.D. Cal. Jan. 7, 2015) (upholding assumed 50% violation rate [or 2.5 violations per week per claim; or 5 total] on both meal and rest period claims where plaintiffs alleged that "Plaintiffs and the class members sometimes did not receive all of their meal periods in a lawful fashion" and Defendant "maintained a policy or practice of not paying additional compensation to employees for missed, uninterrupted [sic], and/or timely meal and/or rest periods").

### 5.   **Attorneys' Fees**

36.   As shown above, with respect to claims against BD, there is at least $6,708,898.55 in controversy ($928,700 in wage statement penalties + $844,804.80 in waiting time penalties + $4,935,393.75 in meal/rest period premiums = $6,708,898.55), taking into consideration only some of the claims for which Plaintiff seeks relief.

37.   Plaintiff also seeks attorney fees in connection with the above claims. (Ex. 1, Complaint – Prayer for Relief on the First, Seventh, and Eighth Causes of Action.) In the Ninth Circuit, 25% of the total recovery is the "benchmark level" for reasonable attorney fees in class action cases. *Garibay v. Archstone Communities LLC*, 539 F. App'x 763, 764 (9th Cir. 2013). Using this 25% benchmark, courts have included attorney fees for 25% of the total recovery in determining the amount in controversy under CAFA. *Id.* (contemplating inclusion of 25% of total recovery in attorney fees under CAFA); *Rwomwijhu v. SMX, LLC*, No. CV1608105ABPJWX, 2017 WL 1243131, at *6 (C.D. Cal. Mar. 3, 2017) (including fees in calculation, noting that "courts in the Ninth Circuit, including this one, have allowed an estimated fee award of 25% of a plaintiff's damages in calculating the amount in controversy under CAFA"); *Sanchez v. Russell Sigler, Inc.*, No. CV1501350ABPLAX, 2015 WL 12765359, at *7 (C.D. Cal. Apr. 28, 2015) (same).

38.   Assuming an award of attorneys' fees in the benchmark amount of 25% of the total recovery, the amount in controversy for such fees is **$1,677,224.64** ($6,708,898.55 x 0.25).

6. **Summary**

39. Based Plaintiff's allegations, the amount in controversy as alleged against BD is at least **$8,386,123.19**. Even excluding Plaintiff's claims against Apidel and Plaintiff's claims for unpaid wages, unpaid overtime, failure to indemnify necessary business expenses, failure to pay for reporting time pay, and attorneys' fees associated with these other claims, the Complaint easily satisfies the $5 million threshold. Even the most conservative estimated recovery for these other claims pushes the amount in controversy further beyond the jurisdictional minimum.

**Amount in Controversy as Alleged Against Apidel**

1. **Relevant Data**

40. During the class period, from August 8, 2018 to the present, Apidel has employed, in the aggregate, at least 420 current and former non-exempt employees in California, who worked approximately 7,381 workweeks, and had an average hourly rate of approximately $21.00. (Altom Decl., ¶¶ 5-6.) During this period, non-exempt employees were issued wage statements on a bi-weekly basis. (*Id.* at ¶ 5.)

41. During the class period, Apidel issued at least 3,736 wage statements to approximately 420 non-exempt employees in California. (*Id.*)

42. From on or about August 8, 2018 to the present, approximately 40 individuals who were employed as non-exempt employees in California separated from their employment with Apidel. (*Id.*) These employees earned an average hourly rate of $21.00, which equals an average daily rate (8 hours x $21.00) of approximately $168.00. (*Id.*)

2. **Wage Statement Penalties**

43. A one-year statutory period applies to Plaintiff's claim for wage statement penalties. Cal. Code Civ. Proc. § 340(a); *Falk v. Children's Hospital Los Angeles*, 237 Cal.App.4th 1454, 1469 (2015).

44. Plaintiff seeks statutory penalties for inaccurate wage statements pursuant to Labor Code section 226 in the amount of $50 for the initial violation and $100 for

each subsequent violation. (Ex. 1 to Altom Decl., Complaint – Prayer for Relief on the Fifth Cause of Action, ¶ 1.)

45.    As noted above, from August 8, 2018 to the present, Apidel issued at least 3,736 wage statements to 420 putative class members. (Altom Decl., ¶ 5.)  Because Plaintiff brings a claim under the Unfair Competition Law, Apidel calculates the amount in controversy over a four year period.   Therefore, based on Plaintiff's allegations, the amount in controversy for wage statement penalties is **$352,600** (420 wage statements x $50 = $21,000; 3,316 wage statements x $100 = $331,600 [$21,000 + $331,600 = $352,600]).

### 3.    Waiting Time Penalties

46.    California Labor Code § 203 provides that "[i]f an employer willfully fails to pay … any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."

47.    A three-year statutory period applies to Plaintiff's claim for waiting time penalties. *Pineda v. Bank of America, N.A.*, 50 Cal. 4th 1389, 1398 (2010) (waiting-time penalty claims are governed by three-year statute of limitations under Cal. Code Civ. Proc. § 338(a).)

48.    Plaintiff seeks penalties for "[t]he wages of all terminated employees from the California Labor Sub-Class as a penalty…in accordance with Cal. Lab. Code § 203." (Ex. 1, Complaint – Prayer for Relief on the Fourth Cause of Action, ¶ 1.)

49.    As noted above, from August 8, 2018 to the present, at least 40 individuals who were employed as non-exempt employees in California separated from their employment with Apidel.  Because Plaintiff brings a claim under the Unfair Competition Law, Apidel calculates the amount in controversy over a four year period. These employees earned an average hourly rate of $21.00. (Altom Decl., ¶ 5.) Therefore, based on Plaintiff's allegations, the amount in controversy for waiting time

penalties is **$201,600** ($21.00 x 8 hours x 30 days x 40 putative class members = $201,600.00).

### 4.   Meal and Rest Period Premium Pay

50.    Under California's Unfair Competition Law ("UCL"), Plaintiff seeks restitution in the form of one additional hour of premium pay for each workday in which Defendant failed to provide a timely, duty-free meal period. (Complaint, Prayer for Relief on the Eight Cause of Action ¶ 1.) Similarly, under the UCL, on behalf of himself and the putative class, Plaintiff seeks restitution in the form of one additional hour of premium pay for each workday in which Defendant failed to provide a timely, lawful rest break. (*Id.*)

51.    The statute of limitations for a claim under the UCL is four years. Cal. Bus. & Prof. Code § 17208. Under the UCL, an individual may recover unlawfully withheld wages as a form of restitution. *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 173 (2000). A plaintiff may seek to recover meal or rest period premium pay as a form of restitution under the UCL, under the theory that premium pay constitutes wages. *See Tomlinson v. Indymac Bank, F.S.B.*, 359 F. Supp. 2d 891, 896-97 (C.D. Cal. 2005).

52.    During the class period, from August 8, 2018 to the present, Apidel has employed, in the aggregate, at least 420 current and former non-exempt employees in California, who worked approximately 3,736 pay periods and had an average hourly rate of approximately $21.00.  (Altom Decl., ¶¶ 5-6.)

53.    Apidel may employ reasonable assumptions based on the Complaint to determine the amount in controversy. It is alleged that Plaintiff and putative class members were "regularly required" to work shifts in excess of five hours without being provided a lawful meal period and over ten hours without being provided a second meal period. (Complaint, ¶ 28.) It is further alleged that Plaintiff and putative class members were "systematically not authorized and permitted" lawful rest periods. (Complaint, ¶ 37.) In fact, Plaintiff specifically alleges that he was not permitted to

take a rest break "approximately 75% of the time throughout his employment with Defendants." (Complaint, ¶ 39.)  Because Plaintiff brings a claim under the Unfair Competition Law, Apidel calculates the amount in controversy over a four year period. Based on these allegations of regular and systematic meal and rest period violations, Apidel utilized an extremely conservative estimate of 25% meal and 25% rest period violation rates (or 2.5 total violations per week and 5 total per pay period), resulting in a total amount of meal and rest period premium pay in controversy of approximately **$392,280.00** (3,736 pay periods x 5 total violations per pay period x $21.00 per hour = $392,280.00). Case law finds that similar allegations can even support higher violation rates as a matter of law. *See, e.g., Elizarraz v. United Rentals, Inc.*, 2019 WL 1553664, at *3-4 (C.D. Cal. Apr. 9, 2019) ("**courts have found violations rates of 50% proper with language such as 'policy and practice'**"; Oda v. Gucci Am., Inc., No. 2:14-CV-07469-SVW, 2015 WL 93335, at *4-5 (C.D. Cal. Jan. 7, 2015) (upholding assumed 50% violation rate [or 2.5 violations per week per claim; or 5 total] on both meal and rest period claims where plaintiffs alleged that "Plaintiffs and the class members sometimes did not receive all of their meal periods in a lawful fashion" and Defendant "maintained a policy or practice of not paying additional compensation to employees for missed, uninterrupted [sic], and/or timely meal and/or rest periods").

### 5. Attorneys' Fees

54. As shown above, with respect to claims against Apidel, there is at least $946,480 in controversy ($352,600 in wage statement penalties + $201,600 in waiting time penalties + $392,280 in meal/rest period premiums = $946,480), taking into consideration only some of the claims for which Plaintiff seeks relief.

55. Plaintiff also seeks attorney fees in connection with the above claims. (Altom Decl., Ex. 1, Complaint – Prayer for Relief on the First, Seventh, and Eighth Causes of Action.) In the Ninth Circuit, 25% of the total recovery is the "benchmark level" for reasonable attorney fees in class action cases. *Garibay v. Archstone*

*Communities LLC*, 539 F. App'x 763, 764 (9th Cir. 2013). Using this 25% benchmark, courts have included attorney fees for 25% of the total recovery in determining the amount in controversy under CAFA. *Id.* (contemplating inclusion of 25% of total recovery in attorney fees under CAFA); *Rwomwijhu v. SMX, LLC*, No. CV1608105ABPJWX, 2017 WL 1243131, at *6 (C.D. Cal. Mar. 3, 2017) (including fees in calculation, noting that "courts in the Ninth Circuit, including this one, have allowed an estimated fee award of 25% of a plaintiff's damages in calculating the amount in controversy under CAFA"); *Sanchez v. Russell Sigler, Inc.*, No. CV1501350ABPLAX, 2015 WL 12765359, at *7 (C.D. Cal. Apr. 28, 2015) (same).

56.     Assuming an award of attorneys' fees in the benchmark amount of 25% of the total recovery, the amount in controversy for such fees is **$236,620** ($946,480 x 0.25).

### 6.     <u>Summary</u>

57.     Based Plaintiff's allegations, the amount in controversy as alleged against Apidel is at least **$1,183,100**.

58.     Together the amounts in controversy (that alleged against BD and that alleged against Apidel) satisfies the requirement for removal under CAFA.

## IV.     <u>VENUE IS PROPER IN THIS COURT</u>

59.     Under 28 U.S.C. § 1441(a), this Notice of Removal is filed in the district court of the United States in which the Action is pending. The Superior Court for the County of Santa Clara is within the Northern District of California. (28 U.S.C. § 84(d).) Therefore, venue is proper in this Court because it is the district and division embracing the place where the Action is pending. (28 U.S.C. § 1441(a).)

60.     In accordance with 28 U.S.C. §1446(a), this Notice of Removal is accompanied by the Declarations of Jaime Serrano and Janna I. Jamil, and Exhibits 1 to 5, which constitute a copy of all processes, pleadings, and orders provided to BD, as well as the Declaration of Ed Altom and Exhibits 1 and 2, which constitute a copy of all processes, pleadings, and orders provided to Apidel.

61.     As required by 28 U.S.C. §1446(b) and Federal Rule of Civil Procedure 6(a), this Notice of Removal was filed timely as Plaintiff served his Complaint on BD on September 28, 2022 (Jamil Dec. ¶ 2) and on Apidel on October 12, 2022.

62.     As required by 28 U.S.C. §1446(d), Defendants provided Notice of Removal to Plaintiff through his attorneys of record.

63.     As required by 28 U.S.C. §1446(d), a copy of the original Notice of Removal will be filed with the Superior Court of the State of California, for the County of Santa Clara.

64.     If this Court has a question regarding the propriety of this Notice of Removal, Defendants request it issue an Order to Show Cause so it may have an opportunity to more fully brief the grounds for this removal.

## V.    **CONCLUSION**

For the foregoing reasons, Defendants remove the above-entitled action to the United States District Court for the Northern District of California.

DATED:  October 28, 2022

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By:  */s/ Spencer C. Skeen*
Spencer C. Skeen
Marlene M. Moffitt
Janna I. Jamil

Attorneys for Defendant BECTON DICKINSON AND COMPANY (erroneously sued as BECTON AND DICKINSON)

1

2

DATED: _____, 2022            FOLEY & LARDNER LLP

3

4                                        By: */s/ Christopher Ward*_____

5                                             Christopher Ward
                                              Sara Abarbanel

6                                        Attorneys for Defendant APIDEL
                                         TECHNOLOGIES, LLC

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT

## __SIGNATURE CERTIFICATION__

Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures Manual,, I hereby attest that Christopher Ward and Sara Abarbanel, on whose behalf this filing is jointly submitted, has concurred in this filing's content and has authorized me to file this document.

*/s/ Spencer C. Skeen*
Spencer C. Skeen